# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAKURA COX, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>TRUSTEES OF BOSTON UNIVERSITY,<br><br>        Defendant. | No.<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     NATURE OF ACTION ..................................................................................1

II.    JURISDICTION AND VENUE ...................................................................2

III.   PARTIES .....................................................................................................3

IV.   FACTS .........................................................................................................5

      A.     Background .......................................................................................5

      B.     The Novel Coronavirus Shutdowns And Defendant's Campus Closure ................8

      C.     Defendant's Refusal To Issue Tuition And Fee Refunds ....................................13

V.     CLASS ACTION ALLEGATIONS ...........................................................14

VI.   CAUSES OF ACTION ..............................................................................18

      COUNT I   BREACH OF CONTRACT.....................................................18

      COUNT II   UNJUST ENRICHMENT .....................................................19

      COUNT III   CONVERSION ...................................................................20

PRAYER FOR RELIEF ......................................................................................21

JURY DEMAND ................................................................................................21

Plaintiff, SHAKURA COX, individually and on behalf of all others similarly situated, for her Class Action Complaint against Defendant Trustees of Boston University, based upon personal knowledge as to her own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.      NATURE OF ACTION

1.      This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.      Despite sending students home and closing its campus(es), Defendant continues to charge for tuition and fees as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiff and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. Plaintiff is compelled, however, to file now to preserve her rights and those of the proposed class. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for their response to this Class Action Complaint.

3.      While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law. Defendant has refused to provide any tuition or fee refund for the Spring 2020 semester.

4.      As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full value of the services paid and did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Massachusetts, where this action is originally being filed, and that the total

number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C.

§ 1332(d)(5)(B).[2]

6.      Venue is appropriate in this District because Defendant is located within the

District of Massachusetts. And on information and belief, events and transactions causing the

claims herein, including Defendant's decision-making regarding its refund policy challenged in

this lawsuit, has occurred within this judicial district.

### III.      PARTIES

7.      Plaintiff Shakura Cox is a citizen and resident of the State of Massachusetts.

Plaintiff Cox is enrolled as a full-time graduate student in Boston University's School of Social

Work for the Spring 2020 academic term at Defendant. Plaintiff is in good financial standing at

Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board

charges assessed and demanded by Defendant for the Spring 2020 term. Plaintiff paid Defendant

for opportunities and services that she will not receive, including on-campus education, facilities,

services, and activities.

8.      Plaintiff enrolled at Boston University to obtain the full experience of live, in-

person courses and direct interactions with instructors and students, facilitated by small class

sizes for her program. Plaintiff chose Boston University due to the accessibility of professors and

camaraderie with her classmates in and out of the classroom. While Boston University offers

some online programs, Plaintiff purposefully did not apply to those programs.

9.      On or about March 11, 2020, Defendant informed Plaintiff that classes would

transition to online-only classes for at least a month, from March 16 through April 13, 2020.

---

[2] "Boston University serves a high number of out-of-state students, with 86% of the student body residing outside of Massachusetts or from other countries." https://www.collegesimply.com/colleges/massachusetts/boston-university/students/ (last visited April 29, 2020).

Then, on March 17, 2020, Boston University informed students that classes were cancelled in person for the remainder of the semester.

10.     As a result, Plaintiff's coursework has completely transitioned to online learning. While Plaintiff's coursework requires her to complete group projects, such projects are now significantly harder to orchestrate. Plaintiff has been unable to connect with professors and classmates on the same level online. Furthermore, as part of Plaintiff's curriculum, Boston University expects her to complete an internship requirement, currently two days per week. However, with the pandemic, Plaintiff can no longer go to the office where she previously completed her internship, can no longer interact in-person with her supervisors and social work clients, and has lost such valuable educational experiences that follow and the ability to engage in vital impromptu communications with such supervisors and clients.

11.     With the transition to online learning, Plaintiff has experienced a decrease in the quality and academic rigor compared to her experience in-person. Plaintiff's ability to interact, and the number of interactions, with professors has significantly decreased. Moreover, the assignments and expectations of professors is less rigorous and less is expected of the students. Such decreased assignment and reduced expectations in turn have reduced and negated the educational experience for which Plaintiff paid Defendant.

12.     Defendant Trustees of Boston University is an institution of higher learning located in Boston, Massachusetts. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charged Plaintiff and the Class Members.

## IV.    FACTS

### A.    Background

13.    Founded in 1839, Boston University is the fourth largest private, not-for-profit, residential research university in the United States, with over 35,000 students across over 300 programs of study.

14.    As of June 30, 2019, Defendant's endowment totaled over $2.3 billion and the university ended the fiscal year with assets totaling more than $7 billion. Defendant collected $1.164 billion in net student tuition and fees—a $64.5 million increase from the year before— with Defendant's total operating revenues totaling $2.17 billion. Moreover, Defendant reported a $215.2 million positive change in net assets, with total operating revenues exceeding total operating expenses by over $158 million.

15.    Boston University's first-ever fundraising campaign also concluded in September 2019, with Defendant reporting raising a total of $1.85 billion in support that established more than 267 endowed scholarship funds, 57 endowed full professorships, and numerous gifts for the major funding of campus capital projects over the past several years.

16.    While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see, e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

17.    Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

18.    A few examples of such efforts to promote that experience follow: Boston University emphasizes the "rigorous academics" offers, with more than 300 programs of study

and great academic flexibility. Moreover, the school highlights its residential campus and living communities. And it also promotes the school's "perfect class size" in admissions materials: "For a University of more than 16,000 undergraduates, BU has a surprisingly small student-to-faculty ratio—10:1. With an average class size of 27, you'll not only meet award-winning professors, you'll engage with them."

19.     Boston University does not limit its self-promotion to academics, rather it also promotes non-academic opportunities as part of the university experience: "You'll do so much more than just study here. You will get involved in any number of our 450+ student groups. So play in a BU band, join a Broomball team, attend a BU Hockey game, get involved in Greek life, run for BU Student Government, have coffee and conversation at the Howard Thurman Center for Common Ground, attend a Dear Abbeys acappella show, chow down at Lobster Night—and you'll feel your Terrier pride in no time."

20.     Moreover, such experiences are not limited to Boston University's undergraduate population but apply to Boston University's graduate study programs as well. For example, the Master of Social work program promotes "a dynamic, hands-on learning experience, nestled in the heart of vibrant Boston—a leading city for education, healthcare, and nonprofits. During two years of study on campus, our students complete a multi-method curriculum guided by faculty experts and dedicated practitioners that prepares each student for success in a range of social work careers. After selecting a major, students may choose from four specialization areas or opt to pursue one of three dual degree options."[3] As to the classroom experience, Boston University notes the following: "The classroom is a critical component of an SSW education, as is having the opportunity to apply your knowledge in a social work setting, which takes learning to an

---

[3] http://www.bu.edu/ssw/academics/msw/ (last visited April 29, 2020).

even more dynamic level. An integral and required part of the SSW experience, the field education internship is a course that offers students practice experience with individuals, families, groups, communities, and organizations. Internships take place in many settings where social workers practice . . . Placements and practice courses take place concurrently, integrating classroom and field learning. Students typically spend two or three days a week at their internships."[4]

21.     To obtain such educational opportunities and activities, Plaintiff and the Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

22.     For the Spring term 2020, Defendant assesses the following: $27,360 for general tuition, $2,740 for a dining plan, $5,360 for housing for a total of $35,440. Students also pay a variety of fees, including but not limited to student services fees (ranging from $172 for full-time graduate students per semester to $307 for full-time undergraduate students per semester), health and wellness fees ($219 per semester for undergraduates and graduates), community service fees ($60 per semester for undergraduates).[5]

23.     Similarly, Plaintiff's program through the School of Social Work assesses full time students' tuition at $17,568 for the Spring term. Notably, the School of Social Work charges less per credit hour for online courses than it does for regular course work. While Defendant's normal per-credit hour charge are assessed at $1,098 per credit normally, it reduces the credit hour charge by approximately 23% to $850 for online MSW courses.[6]

---

[4] https://www.bu.edu/ssw/academics/field/ (last visited April 29, 2020).

[5] https://www.bu.edu/reg/registration/tuition-fees/ (last visited April 29, 2020).

[6] *Id.*

010920-16/1260563 V3

**B.      The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

24.      On December 31, 2019, governmental entities in Wuhan, China confirmed that

health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days

later, researchers in China identified a new virus that had infected dozens of people in Asia,

subsequently identified and referred to as the novel coronavirus, or COVID-19.

25.      By January 21, 2020, officials in the United States were confirming the first

known domestic infections of COVID-19.

26.      Due to an influx of thousands of new cases in China, on January 30, 2020, the

World Health Organization officially declared COVID-19 as a "public health emergency of

international concern."

27.      By March 11, 2020, the World Health Organization declared COVID-19 a

pandemic.

28.      Travel and assembly restrictions began domestically in the United States on

March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-

place orders. Other states, counties, and municipalities have followed the shelter-in-place orders

and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District

of Columbia, and Puerto Rico are being urged or directed to stay home.

29.      As it relates to this suit, on March 10, 2020, Massachusetts Governor Charlie

Baker declared a state of emergency, giving local officials more flexibility to respond to the

Coronavirus outbreak.

30.      The next day, on or about March 11, 2020, Boston University effectively closed

its campus and classes, migrating all or substantially all classes online for the period of March 16

through April 13, 2020. As noted in correspondence to students from Boston University's

President Robert Brown titled "Letter to the Community on Coronavirus":

-8-

"Due to the increased spread of the coronavirus throughout the United States and around the world, we have decided to make the following changes, effective **Monday, March 16, 2020 until Monday, April 13, 2020**:

1.     **Undergraduate, graduate, and BU Academy classes on the Charles River and Medical Campuses will not meet in-person**; course content and instruction will be moved online and classes will meet remotely at their regularly scheduled times. Students with questions about courses or academic accommodations should contact their professors directly.

2.     **We strongly advise that students who are not presently on campus do not return to campus at the conclusion of spring break**. We have a large number of students on campus during the break, and we encourage those students to consider going home, if possible. However, our residences and dining halls will remain open during this period for those who choose to stay on campus or are unable to return to their homes.

3.     **The University will not hold any non-academic gatherings or meetings**; only activities for research with fewer than 10 participants will be permitted.

4.     **All domestic and international travel by faculty, staff, and students, supported by funds administered by the University, is suspended**."[7]

(Emphasis in original.)

31.     In doing so, President Brown stressed the importance of in-person educational experiences: "Discontinuing in-person instruction is a difficult decision, as it interrupts an essential element of our learning community, the interactions that occur in our classrooms, laboratories, and studios. We recognize that this will cause significant disappointment to many students, faculty, and staff."[8] (Emphasis added.)

32.     A week later, on March 17, 2020, President Brown informed students that the remainder of the semester would be limited to online only and that students would be requested

---

[7] https://www.bu.edu/president/letter-to-the-community-on-coronavirus-followup/ (last visited April 29, 2020).

[8] *Id.*

to vacate campus residential facilities, as noted in correspondence to students titled "Message

from President Brown, COVID-19 Update":

> "This last month we have experienced unprecedented uncertainty as Boston University
> and the rest of the world have confronted the spread of COVID-19. It has been amazing
> to watch our students, faculty, and staff quickly adapt to changes in the way we live and
> teach, especially the extraordinary efforts needed to take our courses online. ***Knowing
> that online delivery is not a substitute for living and learning in our academic
> community, we have held open the hope that we might be able to safely return to in-
> person instruction in the second half of April***. This hope now seems to be unrealistic,
> and thus I am making a number of decisions today. To safeguard you and our
> community, I am announcing that:
>
> > • All classes and examinations for the remainder of the spring semester will
> > be held remotely.
> >
> > • We ask all our undergraduate students to leave Boston University
> > residences and return home by Sunday, March 22, or sooner if possible.
> > We understand that going home is not possible for everyone; please see
> > the instructions below if you need an exception."[9]

(Emphasis added.)

33.     Though the reasons for such closures are justified, the fact remains that such

closures and cancellations present significant loss to Plaintiff and the Class Members as even

Defendant's own communications recognize.

34.     College students across the country have offered apt descriptions of the loss they

have experienced as a result of the pandemic, highlighting the disparity between students'

bargained for educational experience and the experience that colleges and universities, including

Defendant, now provide.

35.     For example, as reported in The Washington Post, one student "wonders why he

and others . . . are not getting at least a partial tuition refund. Their education, as this school year

---

[9] https://www.bu.edu/president/message-from-president-brown-covid-19-update/ (last visited
April 29, 2020).

ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social

experience students imagined when they enrolled. But tuition remains the same: $27,675 per

semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from

New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . . It shouldn't

just be a part of the business model where, no matter what happens, you have to pay the same

amount. The cost needs to reflect some of the realities.'"[10]

36.     As another example, as reflected in a Change.org petition, with nearly 5,000

supporters, students at another major university highlight the loss experienced by students: "As a

result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of

emergency in Illinois. In response, Northwestern University made the sensible decision to offer

all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of

the quarter as the situation worsens. While this is certainly the right call to ensure the health and

safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by

switching to online education for potentially an entire term. For the following reasons, we are

seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter.

Since Northwestern is a top private university, the estimated annual cost of attendance of

$78,654 goes towards a comprehensive academic experience that cannot be fully replicated

online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no

longer have access to invaluable face-to-face interaction with faculty, resources necessary for

specific programs, and access to facilities that enable learning."[11]

---

[10] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

[11] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

37.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[12]

38.     Boston University students echo these efforts. Boston University students via a Change.org petition with over 2,100 signatures, are seeking a partial refund of spring semester tuition noting:

> "[T]he students of this university also accept the high cost of attendance to make use of its world-class facilities and receive its uniquely-prestigious and comprehensive educational experience in the heart of Boston, to which our access is ultimately diminished by the move to an online format. This is why we believe we should be partially refunded for tuition in a way which accurately represents the changes made to the student experience in response to the COVID-19 pandemic; additionally, students not returning to campus after March 16th will not be utilizing university housing and dining resources during the latter portion of the semester and should not be financially responsible for room and board past March 6th, the last day of classes before Spring Break.
>
> ***
> While exact numbers can and should be a discussion between the student body and administration, the movement for student-sided refunds is to simply ensure that refunds are given, and that when they are, they actively prioritize representing changes to the student experience. This means a refund policy on tuition which prioritizes accurately reflecting changes to students' educational experience (and actually puts the refund in students' hands) rather than minimizing the amount refunded, and a refund policy on room & board which strictly represents students' actual periods of use rather than university-sided logistics which ultimately preserve university resources during a time of reasonably greater spending."[13]

39.     Similarly, as one student noted in Boston University's independent student newspaper The Daily Free Press: "I just think expecting students to pay tuition in full for classes

---

[12] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

[13] https://www.change.org/p/boston-university-organize-for-student-sided-partial-tuition-refunds-at-boston-university-the-50-33-plan (last visited April 29, 2020).

being held online is unreasonable, especially given that so many of us are unsure about whether

we'll be financially able to attend college in the fall. Many of us are worried about our parents

losing their jobs, or are ourselves unable to work due to social distancing measures or health

conditions. This pandemic is incredibly destabilizing and I think colleges should do more for

their students to make this time less terrifying."[14]

40.     The Daily Free Press also highlighted another Boston University student's

explanation of the detrimental impact on students by the shift to online courses:

> Jasmine Gordon, a senior in the College of Arts and Sciences, said she thinks tuition
> should have seen some refunding as well.
>
> "I personally feel as though tuition encompasses so much," Gordon said. "I think face to
> face interaction is far more valuable than anything else at BU. I know myself and a few
> other students who are watching. We're not going to Zoom every day. We aren't talking
> to our professors every day. We get into the emails and we're watching old, pre-recorded
> lectures."
>
> She also said that her lab courses have declined in quality.
>
> "My labs have been cut short," Gordon said. "Skills that I would have acquired had we
> had class are no longer available to me and instead are being substituted for more work,
> which is even more frustrating given the circumstances."[15]

## C.     Defendant's Refusal To Issue Tuition And Fee Refunds

41.     Given Defendant's transition to online classes and COVID-19 concerns,

Defendant asked students to vacate student housing as soon as possible and no later than March

22, 2020.

---

[14] https://dailyfreepress.com/2020/04/14/canceled-boston-university-should-partially-refund-our-tuition-money/ (last visited April 29, 2020).

[15] Melissa Ellin, *Students to receive partial refunds for Spring semester,* The Daily Free Press (April 4, 2020), available at https://dailyfreepress.com/2020/04/04/students-to-receive-partial-refunds-for-spring-semester/ (last visited April 29, 2020).

42.     While Defendant has agreed to prorate room and board charges as of March 22, 2020, it has not agreed to do the same to tuition or mandatory fees.

43.     Rather, Defendant announced tuition will remain the same for the Spring 2020 term because "classes are continuing for the remainder of the semester via remote instruction."

44.     It does so notwithstanding its recognition that "online delivery is not a substitute for living and learning in our academic community."

45.     Defendant has also refused to give a prorated refund for fees paid for student services students cannot use because those services were curtailed, eliminated, or because the student followed the university's instruction to leave the campus and return home. As Defendant explains: "There will be no adjustments or account credits for mandatory fees. Under the direction of the Dean of Students, funds collected through the Community Service Fee are allocated directly to support student organizations, programs, and services."

## V.     CLASS ACTION ALLEGATIONS

46.     Plaintiff sues under Rule 23(a), (b)(2)(1), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and a Class defined as follows:

> All persons enrolled at Defendant for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

47.     The definition of the Class is unambiguous. Plaintiff is a member of the Class Plaintiff seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

48.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's records, however, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

49.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

50.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

51.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

010920-16/1260563 V3

a. Whether Defendant engaged in the conduct alleged;

b. Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

c. Whether Defendant breached identical contracts with Plaintiff and the Class Members;

d. Whether Defendant violated the common law of unjust enrichment;

e. Whether Defendant converted Plaintiff and the Class Members refunds and/or rights to refunds; and

f. The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

52. The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

53. Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition and/or fees.

54. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members she seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class

actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

55.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

56.     In addition, under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

57.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

58.     Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

010920-16/1260563 V3

## VI.     CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

59.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

60.     Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

61.     Under their contracts with Defendant, Plaintiff and the members of the Class paid Defendant tuition and/or fees for Defendant to provide in-person instruction and services and access to Defendant's facilities.

62.     Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

63.     However, Defendant has breached such contracts, failed to provide those services, and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Plaintiff and the Class Members' ability to access university facilities, and/or has evicted Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

64.     Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

65.     Plaintiff are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT II

## UNJUST ENRICHMENT

66.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

67.     At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits on Defendant, *i.e.*, monetary payments for tuition and/or fees, so that Plaintiff and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus buildings and dormitories.

68.     Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the Class Members.

69.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

70.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class with full knowledge and awareness that because of Defendant's unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

71.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

72.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to and seek disgorgement and restitution of the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board

## COUNT III

## CONVERSION

73.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

74.     Plaintiff and the other members of the Class have an undisputed right to receive educational services, activities, and access Defendant's facilities for the Spring 2020 term. Plaintiff and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

75.     Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while Defendant has unlawfully retained the monies Plaintiff and the Class Members paid Defendant, as well as barred Plaintiff from Defendant's facilities.

76.     Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

77.     Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

78.     Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.      Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

B.      Damages in the amount of unrefunded tuition and/or fees;

C.      Actual damages and all such other relief as provided under the law;

D.      Pre-judgment and post-judgment interest on such monetary relief;

E.      Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on her own behalf and on behalf of Class Members.

Dated: April 30, 2020

Respectfully submitted,

By: */s/ Kristie LaSalle*
Kristie LaSalle (BBO #692891)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
(617) 482-3700
kristiel@hbsslaw.com

Steve W. Berman (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice* Forthcoming)
Whitney K. Siehl (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

Andrew Levetown
IVEY & LEVETOWN, LLP
6411 Ivy Lane, Suite 304
Greenbelt, MD 20770
(703) 618-2264
asl@iveylevetown.com

*Attorneys for Plaintiff, individually and on behalf of all others similarly situated*

010920-16/1260563 V3